Thank you New York Mellon, formally known as the Bank of New York, as the trustee, for the certificate holders of the C.W.M.D.S., Incorporated, and the Fast and Frivolous Series 2005-04, Tentative Appellee, v. Francesca T. Rodriguez, Jesse Rodriguez, defendants' appellants. Elizabeth Carroll, Supreme Defendant. Arguing on behalf of the Appellee, Mr. Gianni A. Raimondi. Arguing on behalf of the Appellee, Jr., Mr. Nathan B. Rescore. Arguing on behalf of the Appellee, Jr., Ms. Amy's Bank, Taylor-Hirsa, Mr. James M. Dash. Arguing on behalf of the Appellee, Jr., Bank of New York, Mr. Poonam K. Marbon. Okay, gentlemen, I understand you've divided your time as an agreeable method. Okay. Encounsel when you're ready. Good morning, panel. Giovanni Raimondi on behalf of appellants, Francesca Rodriguez, and Jesse Rodriguez. The issue before the court is very narrow. It's whether an intention to surrender in bankruptcy allows a bank to violate due process rights of the homeowner. And in this instance, it cannot. The timeline here is very relevant. The timeline is the foreclosure was filed by the bank on April 25, 2012. The bankruptcy was filed May 17, 2012. The bankruptcy was discharged September 18, 2012. And the purported service on my clients was December 4, 2012. At December the 4th, 2012, what property interests did your client have? What interests did they have in the property at that point? They still owned the property. How? Because after the discharge, what ends up happening is when you identify the property, which they did, they identified the property in the personal assets and the personal real property that they owned. After there's a discharge, under the bankruptcy code, the trustee abandons the property back to the debtor. Anything that is not administered goes right back to the debtor. But this is not an issue of abandonment because, again, the petitioners here identified the property. So it's not a failure to disclose. The issue here is what effect does the surrender have on the statement of intention? And the surrender in this case, all it does is it identifies to the lender or to the creditor that is identified in the statement of intentions on what to do next. It acts as a trigger point. Either you surrender, which they did, and it tells the bank, okay, you need to lift the stay if you want, and proceed to adhere to the IMFL state laws and foreclose properly. It doesn't act. A surrender here on the statement of intentions does not allow a bank to essentially, at an extreme point, utilize self-help, go and take the property, go and say, give me title to the property. They still have to adhere to state laws. One of those state laws is due process, service of process, by which they have to properly serve a summons and complaint upon the defendants. Anything else would be tantamount to self-help. And that's why we believe Judicial Establishment should have not been a bar to the 1401 petition that was filed. But did they not list the bank? Did they not list the creditor for the mortgage as a secure debt in the bankruptcy? They listed, actually, Bank of America. Bank of New York Mellon is the foreclosing lender here. Right, where they came in subsequently. Correct. But they listed them as a secure debtor in the bankruptcy, correct? Correct. Asking for discharge of that debt. Correct. And that was granted. The discharge was granted, correct. But the discharge does not mean that they can go ahead and violate the due process rights afforded to all Illinois citizens. And what's your authority for that? It's cited in the briefs, Your Honor. But the only way that one can waive personal jurisdiction is either through filing an appearance in a case or through proper service of process. And in Ray Theobald also says it's a Tenth Circuit case, bankruptcy case, that is also cited in my reply brief, that also holds that a surrender does not mean that the creditor can then disregard state laws. And essentially, that's what the court allowed. By dismissing the 1401, the court said, because you surrendered, we can now disregard state due process laws. If there are any other questions? That's all you have? That's all I have. Okay. I believe it's a very narrow issue, Your Honor. You will have a chance for reply. Thank you. Can I have two minutes? I have a sweater on under here, and I'm dying to take this sweater off. Okay. Thank you. Our clerk said that's a first. May it please the Court? Nathan Gregoric, on behalf of Respondents, Appellees Carl, Gary, and Janet Duber, who purchased the subject property following the conclusion of the underlying foreclosure and then sold it to the current owners, Mr. and Mrs. De La Rosa. So your clients were the first purchasers? That is correct. I don't view the issues in this case as narrowly as counsel does. As all parties can see, this Court can affirm on any basis. And to that end, this is a case where 214.01e clearly applies. In particular, since service took place in a municipality that lies within two counties, this case falls squarely within this Court's holding in Rahamad. The Petitioner's attempt to distinguish Rahamad by demanding that this Court take judicial notice of a number of matters, including the boundaries of zip codes and the character of the portion of Chicago that lies within DuPage County. However, all of these matters are outside the record proper and therefore irrelevant under a 214.01e analysis. Well, let's get back to the issue that he makes. I mean, there's case law that says when you surrender your property to a creditor, the creditor obtains it immediately and is free to sell it. He's saying that his clients really never surrendered the property because the bankruptcy trustee gives the property back to them, basically, in a Chapter 7 where they didn't do anything, the trustee didn't take any action on the property. How do you refute that? What's your response to that? So case law makes clear that surrender, at the very least, is a representation to the Bankruptcy Court that the collateral has no equity and the debtor will not contest the foreclosure. So that is one position that he has taken or that the Petitioners have taken, and they're now taking a contrary position here, namely contesting the foreclosure. And I would also submit that that being the case, if they cannot contest the foreclosure, even if the foreclosure were unwound and the petition was granted, granting the petition would be a futile act because they cannot contest the foreclosure. So they basically have no standing at this point after the bankruptcy, and then there's the foreclosure. I'm not sure that it would be characterized as a standing issue. It's a judicial estoppel issue in that they're taking a contrary position and they're now barred from taking that position. And so even if we were to vacate the orders in the foreclosure and restore the parties to the status quo, they cannot contest the foreclosure. So we would be accomplishing a futile act. Now, if this were Chapter 11, we might have a different story, correct? It would depend on the facts. Some of the cases that have been cited in the briefs involve Chapter 13 and Chapter 11 bankruptcies. Perhaps the distinguishing factor would be in many of the cases, especially cited by the petitioner. Those involve the failure to disclose a claim and then later bringing that claim. This involves something I think more intentional. It is a sworn statement of an intention to surrender property and then a pleading laying claim to that property. And to that end, I think it should be noted that the petition was a hybrid plea. So it didn't just ask for a quashing service. It asked for return of the property, for use in occupancy damages, and many other damages captioned under restitution. And that being the case, judicial estoppel clearly comes into play here, given the petitioner's prior sworn statements. Even if they go to the trustee in the bankruptcy to be distributed? Potentially, because, again, the representation to the bankruptcy court was that that property had no equity and there was nothing available for distribution to the creditors. So to allow the petitioners to now capitalize on a property that purportedly has equity in it, I think would be tantamount maybe to a fraud upon the bankruptcy court. But even if they are not stopped from seeking all this relief related to the property, the petitioners have not cited a single case that stands for the proposition that would allow them to seek restitution damages from strangers to the underlying case. The petitioners have also failed to cite any authority that would stand for the proposition that they are allowed to stand by and increase those restitution damages by delaying and bringing their petition to vacate. How do you distinguish Plummer that the defendant cites? The Plummer case, I believe, again, was a Chapter 13 case. And all that case really stood for was that debtors – I'm sorry, the Plummer case was a case that I believe we cited, and that case stands for the proposition that debtors who surrender their property can no longer contest a foreclosure action. And what I think the petitioners have cited many cases for is that surrender doesn't effectuate a transfer of the property. That may or may not be the case, but nonetheless, again, surrender is at the very least a representation to the bankruptcy court that they will not contest the creditor's efforts to recoup that collateral. I think another salient point that's been glossed over here is that the petitioners abandoned this property prior to the commencement of the foreclosure, physically abandoned it. And so that being the case, it's unclear and it's not articulated how they could seek any damages based on the dispossession of the property. I would also note that the petitioner's mortgage contract allowed the lender to enter into the property in the event of an abandonment. So the notion that there was any self-help here I don't think is well-founded based on this record. Entering the property doesn't mean that the bank didn't have to follow all the procedures? No, I'm talking about with respect to the damages claimed for loss of possession. Got it. But again, I think that this court could affirm on many bases, judicial estoppel being one, 214-01E being another, because service was effectuated in Chicago, Rahman's on point. And that is because 214-01E is more circumscribed than the common law bona fide purchaser doctrine because the inquiry under 214-01E is limited to the pleadings, process, and verdict of the court. Here, the record proper does not disclose the location of service or the population of the county in which service was effectuated. In the reply brief, the petitioners contend that application of Rahman here would result in a hyper-technical reading of 214-01E regarding what is apparent on the face of the record. I find this to be a curious argument, given that the petitioner's entire case is based on a hyper-technical reading of the rules of court procedure. And I would submit that what's good for the goose is good for the gander, and 214-01E should be strictly applied here as well. Another basis on which this Court could affirm is latches. And frankly, this is a case that cries out for the application of the doctrine. Again, the petitioners do not dispute that they abandoned the property and chose to stand by while two subsequent sales occurred. So clearly, there was an undue delay. And the undisputed facts clearly demonstrate that both sets of subsequent purchasers would be severely prejudiced if the petitioners are allowed to proceed with their claim. The petitioners don't dispute that these elements of latches have been met. They instead contend that latches cannot apply as a matter of law. However, the Supreme Court's decision in James v. Franz in its progeny makes clear that although an attack on a void order may be brought at any time, latches is an available defense in such a proceeding. Unless Your Honors have any further questions? I have not. No, thank you. Thank you, then. Thank you. Good morning. Good morning. May it please the Court? My name is Jim Dasch and I'm here on behalf of Rosa and Erica De La Rosa and Community Savings Bank, who is the De La Rosa's mortgage lender. Our clients, the De La Rosas, are the subsequent purchasers and their lender. The law has been amply briefed and argued here today. We have little to add on that score, but our clients are here because and only because the petitioners did not bring this petition until six years after stating their intention to voluntarily surrender the property and court papers filed in the bankruptcy court. So you're certainly relying on latches? Oh, absolutely, Your Honor, yes. And they had the misfortune of buying the property before this petition was filed. And, again, we are the second purchasers from the original purchase or the foreclosing mortgagee. Now, perhaps the petitioners could have waited another decade or so to cast a little wider net to get more successive homeowners to suck money out of their pockets. But the legislature has set a maximum time limit in these types of cases with the new laws that were cited in the motions to dismiss this appeal. And we'd ask the court to reconsider these motions on the briefs that were filed. But latches still applies. And you can't wait forever to the prejudice of third parties. Had this petition been filed on a timely basis, our clients certainly would not have purchased the property. And there is an affidavit in this record to that effect that was filed with the motion to dismiss, Paragraph 10 of Erika DelaRose's affidavit. Would we like a broader statement that these cases, these types of cases, should be brought to an end? The answer is absolutely. But the judgment of the trial court here in this case under these facts was just, it is equitable, and it should be affirmed. Nothing further. Thank you. Good morning. If it pleases the courts, Pradeep Marwaha on behalf of Appellee Bank of New York Mellon. To shadow what my colleague said, the main issues in this case are judicial estoppel in context of the petitioner's bankruptcy as well as the defensive latches. But does this, does anything excuse the bank from proper service? Well, Judge, the fact that they surrendered their interest in the property and the bankruptcy, the petitioners have given up all rights that they have to the property. The In Re Wear case cited from the Northern District of Illinois stands for the proposition that upon surrendering of a property, the debtors must not stand in the way of a secured creditor taking possession of the property, must not retain any rights to the property, and must at all times act in good faith. So when they surrender properly, the cases that you've cited say basically you've got to get out of the way of the creditor. That's correct, Judge. When a property is surrendered and upon discharging a bankruptcy, the secured creditor has an interim right to the property. I think that is generally undisputed in terms of bankruptcy law. But they still have to go through the process, right? That's correct, Judge. They can't go immediately to an eviction process or something like that. They have to go through the foreclosure process. That's correct. They would still have to go through the foreclosure process. In this situation, I think the Roman case that was mentioned by Mr. Kuporich is very instructive here in terms of the issue of where service occurred in this case. Going back to the petition and the requirements of 1401, the boundary lines of certain counties are things that a court may take judicial notice of, but there is no case law cited that a court must take judicial notice of things like county boundary lines, populations, or where a particular address lies in relation to two different counties. Even otherwise, there's not necessarily anything that would preclude the bank being able to foreclose on the property, even with standing issues. But I believe the Roman case accurately shows that the matters that were of the record that the subsequent purchasers would have been looking at don't necessarily show that service may not have been affected in DuPage County versus Cook County. As cited in the briefs, the – Let me just be clear here. Your position is the service was valid? That was our argument in the lower court as well as today, Judge. Okay. So there's an equitable effect, too, correct, as your two co-counsels or the two individuals that represent the modified purchasers bring forth? Absolutely. There's a multitude of equitable considerations that this court should take into account when making a decision, judicial estoppel and latches being the first and foremost of those as well. The fact that they have received a benefit of a discharge of a $150,000 mortgage, the property was abandoned, and now they are trying to not only reverse the past several years and get back into the property but also seek damages for that is an inequitable result. They've received the benefits based on their statement of intention, based on their discharge. Notice of suggestion was filed in the underlying foreclosure as well. So I believe that equitable considerations would lead to an affirmation of the lower court's ruling. Thank you. Thank you very much. Reply. Counsel, how do you distinguish the Ibanez case? That's the one where the ñ it's in re theobald. In re theobald trumps, I believe, because in re theobald says that even though there is a surrender with regard to property, to a creditor, it does not allow a creditor to violate state laws. In re Ibanez talks about judicial estoppel and how you have an individual like your client here who goes and files a bankruptcy. They don't redeem. They don't reaffirm. They surrender. And so in exchange for the surrender, they are getting a discharge of all of their debts. So then how is it equitable that they then come back in and they say, oh, well, this was void and we want this property back? Ibanez talks about the equitable effects. It talks about judicial estoppel. How do you ñ how do you distinguish that case from what we have, what facts we have here? Because right now the timing is very important. Service, the violation here, occurred months after the discharge. Months after your client surrendered. Months after the discharge, correct. But the surrender only operates as to indicate to the lender here, the home lender, the mortgage or the mortgagee, to lift the state and proceed through the IMFL, the Illinois Mortgage Foreclosure Law. They still have to serve process. It's not as if they can just not have to file a complaint, not have to get a judgment, not have to go to sale, not have to get an order approving sale. They can just go in and operate on self-help and say, well, we have this surrender document. The surrender document is only a trigger for the lender on how to proceed. One, sit back, relax if it's under a Chapter 13, and accept the payment plan. How about if they did nothing? If the bank did nothing? Yeah. They didn't even file a foreclosure? Right. Then my client retains the property. But your client abandoned the property, didn't they? Abandonment, here's the issue. We're getting into what is a voidable order. If there's a defense in the underlying foreclosure, if there's rights in the property. This is a void order. We don't get past the issue of personal jurisdiction, right? What we're trying to do and what counsel have tried to articulate is to transition the scope of a void order and making it a voidable order, trying to get into the rights of the property, what title, what possession it has. We don't get to that step. We only get to the step of was there personal jurisdiction or not. Personal jurisdiction or subject matter jurisdiction results, a lack of there, results in a void order. We don't get into, under 1401, it says that we don't get into the defenses. But, counsel, this is not a usual void order case. There's a bankruptcy here. And your position is that has absolutely nothing to do with the ultimate disposition. That is my position because of the timing of the bankruptcy and the timing of the service. Bankruptcy law says under 541 and 554, what it says is what becomes the asset of the trustee is at the time of the filing. This violation of due process occurred after the time of filing and occurred after the time of discharge. My position is that, as counsel indicated, your surrender means you cannot contest the foreclosure. So your position is not so. My position is that the other side of that coin is you cannot just disregard State laws. Right. But who would be bringing that action if you can't contest it? And that's the thing. Service wasn't tried on the trustee. It's the trustee doesn't have standing. It is only my client. Right. It's an unassignable right. Right. And your client is the one who agreed not to contest it. So how do we balance those two? By looking at the timing. The timing is so important here because, again. Explain to me why the timing doesn't vote against your client. Because if service of process happened or the purported service of process happened before and then the bankruptcy filing was filed and then there's a discharge, that claim would have had to have been disclosed in the asset report. That claim would have then become the property of the trustee. That claim, if what would have happened, if the trustee didn't pursue this claim, it would have been abandoned back to the debtor to pursue at will. So it's no different. They're trying to take a document that says surrender or reaffirm or rework and try to give it meaning that doesn't exist in bankruptcy law. It simply does not. The surrender does not mean that you give up your due process rights. And that's in reaffiable. Okay. All right. Thank you both for your arguments. We are in recess until the next case, and there will be a decision in due time.